[Cite as *State v. Ceaser*, 2020-Ohio-540.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180648 |
| | | TRIAL NO. C-18CRB-10239 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| ANTON CEASER, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  February 19, 2020


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Adam Tieger*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Timothy J. McKenna*, for Defendant-Appellant.

**MYERS, Presiding Judge.**

{¶1} Defendant-appellant Anton Ceaser appeals his conviction, following a bench trial, for domestic violence in violation of R.C. 2919.25(A).

{¶2} In two assignments of error, Ceaser argues that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. Finding his arguments to be without merit, we affirm the trial court's judgment.

### Factual Background

{¶3} Following an incident that occurred at the home of Ceaser's longtime girlfriend Catherine Haynes, Ceaser was arrested and charged with domestic violence. The victim of his offense was Haynes's daughter A.H.

{¶4} At the bench trial, A.H. testified that she overheard an argument between her mother and Ceaser while she was doing homework. A.H. and several of her siblings intervened in the argument. A.H. testified that she saw Ceaser choking her mother with his left hand, and that she attempted to hit Ceaser and pull his hand off of her mother. In response, Ceaser grabbed A.H.'s neck with his right hand. As Ceaser held A.H.'s neck, he pushed her head into a mirror, which cut A.H.'s face near her eyebrow and caused it to bleed. A.H. received five stitches for the cut on her face and has a scar.

{¶5} Several Delhi Township police officers responded to the incident. Sergeant Murphy testified that he spoke with A.H. and saw a laceration above her right eyebrow, and that he saw what he believed to be several drops of blood on a mirror in the hallway of the home. Sergeant Murphy also spoke with Ceaser, who told him that A.H. and her brother L.G. had intervened in Ceaser's argument with Haynes. Ceaser admitted to Sergeant Murphy that he had put his hands on A.H. and

pushed her, but stated that he had not acted intentionally. Following his investigation, Sergeant Murphy elected to charge Ceaser with domestic violence. He explained that other officers on the scene did not share his opinion and had determined that Ceaser should not have been charged with a crime. But as the ranking officer, Sergeant Murphy had the authority to file charges against Ceaser.

{¶6} Delhi Township Police Officer Mark Myers testified that he had recommended that no charges be filed. After investigating and discovering that multiple persons had been injured during the altercation, Officer Myers determined that Ceaser had not acted knowingly and had injured A.H. while attempting to remove himself from the scene after he was confronted aggressively by multiple members of Haynes's family. Delhi Township Police Officer Asa Coldiron likewise testified that he did not believe that Ceaser should have been arrested because he had not knowingly caused harm to A.H.

{¶7} The trial court found Ceaser guilty of domestic violence. It sentenced him to 180 days in jail, but suspended 150 days and gave Ceaser credit for time served. The trial court additionally imposed a fine, court costs, and two years of probation.

### Sufficiency and Weight

{¶8} In two assignments of error, Ceaser argues that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶9} In reviewing a challenge to the sufficiency of the evidence, this court must determine whether, after construing all reasonable inferences in favor of the state, any reasonable trier of fact could find that the state presented evidence to prove each of the essential elements of the offense beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶10}   In reviewing a challenge to the weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).   We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.  *Id.*

{¶11} Ceaser was convicted of domestic violence pursuant to R.C. 2919.25(A), which prohibits knowingly causing or attempting to cause physical harm to a family or household member.   The term "family or household member" is defined to include "[a] parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender" who resides with, or has resided with, the offender.  R.C. 2919.25(F)(1)(a)(iii).  Ceaser argues that the state failed to prove that A.H. was a family or household member because it presented no evidence that he resided with A.H.

{¶12}   A.H. testified that at the time of the altercation, she lived with her mother, siblings, and Ceaser.  She explained that Ceaser had been her mother's boyfriend for nearly her entire life and had been the most consistent male figure in her life.  Ceaser would help A.H. with her homework and cook for her, and he was present in the house when A.H. went to bed and when she woke up in the morning.

{¶13}  Haynes testified that she had been in a relationship with Ceaser for approximately 13 years.  Although Ceaser was not A.H.'s biological father, he and Haynes had three other children together.  According to Haynes, Ceaser lived in her home at the time of the altercation, and he was at the home every day, unless she had asked him to leave following an argument.  Ceaser would leave for work from her home and return there at the end of the workday.  Although Haynes did not give Ceaser a key to the home, he received mail at Haynes's address, kept his clothing there, and referred to Haynes's address as his home.

{¶14} Construing this evidence and all reasonable inferences in the light most favorable to the state, we hold that the state presented sufficient evidence that Ceaser resided with A.H. at the time of the incident and, consequently, that A.H. was a "family or household member" pursuant to R.C. 2919.25(A). *See Jenks*, 61 Ohio St.3d at 273, 574 N.E.2d 492.

{¶15} Ceaser further argues that the state failed to establish that he had acted knowingly. Pursuant to R.C. 2901.22(B), "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." Ceaser argues that the testimony from the Delhi Township police officers established that he had not knowingly harmed A.H.

{¶16} While both Officer Myers and Officer Coldiron testified that they did not believe Ceaser should have been charged with domestic violence, neither officer discussed the altercation in any detail with A.H. during their investigation. Officer Myers testified that he spoke with A.H. for less than a minute, and that while he noticed an injury on her face, he was unaware of how she received that injury. And Officer Coldiron testified that he could not recall if he had spoken to A.H. during the investigation. Contrary to the testimony from these officers, Delhi Police Sergeant Murphy testified that he believed Ceaser had, in fact, committed domestic violence against A.H. And Sergeant Murphy further testified that A.H. had explained her injury to him and that he had conducted an investigation based on her statement.

{¶17} Viewing Sergeant Murphy's testimony, as well as that offered by A.H. and her mother describing the incident, in the light most favorable to the state, the trial court could reasonably have found that Ceaser was aware that his act of grabbing A.H. around the neck and pushing her head into a mirror was likely to cause her physical harm. *See Jenks*, 61 Ohio St.3d at 273, 574 N.E.2d 492.

5

**{¶18}** We further hold that Ceaser's conviction was not against the manifest weight of the evidence. The trial court was in the best position to judge the credibility of the witnesses. *See State v. Spaulding,* 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 165, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. And the court specifically stated on the record that it found the testimony of A.H. to be the most credible. This was not the rare case in which the trial court lost its way and committed such a manifest miscarriage of justice in convicting Ceaser that his conviction must be reversed. *See Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

**{¶19}** We hold that Ceaser's conviction was supported by both the sufficiency and the weight of the evidence, and we overrule the first and second assignments of error. The judgment of the trial court is, accordingly, affirmed.

Judgment affirmed.

**CROUSE** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.